**SO ORDERED.**

**SIGNED April 11, 2017.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:

ACADIAN ELEVATOR, INC.,                      CASE NO. 15-50743

    Debtor                                      Chapter 7

------------------------------------------------------------------
                           REASONS FOR DECISION
------------------------------------------------------------------

    This is a dispute between two non-debtors, David and Troy Myers, over the scope of a settlement agreement between the trustee and David Myers ("Myers"), and whether that court-approved settlement agreement bars a state court lawsuit brought by Troy Myers ("Plaintiff") in the 15th Judicial District Court, Parish of Lafayette, Louisiana. The court took the matter under advisement following oral argument on April 4, 2017. After considering the parties' arguments, briefs, and the relevant authorities, the court rules as follows.

## JURISDICTION

Plaintiff questions this court's jurisdiction to enter the relief requested by Myers. The Acadian Elevator Chapter 7 case remains open and the trustee is apparently holding funds for further administration. The specific relief requested by Myers involves the interpretation of this court's order approving the trustee's settlement on behalf of the bankruptcy estate as well as a request to enforce the terms of that approved settlement. Myers also requests a ruling on the scope of the automatic stay. These matters fall within the court's jurisdiction in that they involve questions "arising under title 11, or arising in or related to a case under title 11." 28 U.S.C. § 1334. Specifically, these questions impact the administration of the estate because they involve the scope of a court-approved settlement resolving estate claims. Moreover, they involve the interpretation and enforcement of an order of this court, which not only falls within this court's jurisdiction, but is a core proceeding. See In re Chiron Equities, LLC, 552 B.R. 674, 683 (Bankr. S.D. Tex. 2016); In re Christ Hosp., 502 B.R. 158, 161-62 (Bankr. D.N.J. 2013); 28 U.S.C. § 157 (B)(2). Accordingly, this court has jurisdiction over these matters, and is further empowered to enter final orders under Stern v. Marshall. Chiron Equities, 552 B.R. at 685.

## BACKGROUND

Plaintiff and Myers are the co-owners of Acadian Elevator. Myers owns the majority of the stock (75%) and Plaintiff owns a minority interest (25%). On September 28, 2012, Plaintiff commenced a derivative action on behalf of Acadian Elevator against Myers in the 15th Judicial District Court, Lafayette Parish, Louisiana. In that action, Plaintiff alleged that Myers breached his fiduciary duties to Acadian Elevator. On June 18, 2015, Acadian Elevator filed a petition for relief under Chapter 7 of the Bankruptcy Code, and John Luster was duly appointed trustee (the "Trustee"). On January 11, 2016, the Trustee filed an application to settle the estate claims asserted in Plaintiff's state court derivative case under Rule 9019 of the Federal Rules of Bankruptcy Procedure. The proposed settlement provided that the trustee would release the estate claims asserted in the state court action in exchange for a payment of $60,000 by Myers. As part of the proposed settlement (the "Settlement Agreement"), Myers agreed to withdraw his proof of claim. On February 11, 2016, the court entered an order approving the compromise. Plaintiff then obtained an order granting relief from the stay with respect to any individual claims that were not subject to the trustee's settlement of estate claims.

Following the approval and execution of the Settlement

Agreement, Plaintiff amended his state court petition on July 27, 2016. Plaintiff's Supplemental and Amending Petition for Damages (the "Amended Petition") removed Acadian Elevator as a party, re-cast his claims as individual claims for breach of fiduciary duty, and added a new claim for violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUPTA"), La. R.S. 51:1401 et seq. On August 29, 2016, Myers filed exceptions of res judicata, no right of action, lis pendes, and no cause of action in the state court proceeding based, in part, on the settlement he entered into with the Trustee. On October 26, 2016, the 15th Judicial District Court denied Myers' exceptions. On March 9, 2017 – approximately eight months after the state court petition was amended and five months after the state court ruled on his exceptions – Myers filed this motion to interpret and enforce this court's order approving the settlement agreement. The state court trial is currently set for May 15, 2017, approximately six weeks from the date of the hearing on this motion.

**DISCUSSION**

**A. Plaintiff's Claims and the Scope of the Trustee's Settlement Agreement.**

The scope of the Trustee's Settlement Agreement and, hence, the effect of that settlement on Plaintiffs' state court claims turns on the case law distinguishing between estate claims and claims that belong solely to creditors. The property of a debtor's

-4-

estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This broad definition of estate property includes causes of action that the debtor could have asserted as of the commencement of the bankruptcy case. See In re Educators Group Health Trust, 25 F.3d 1281, 1284 (5th Cir. 1994); In re Mortgage America Corp., 714 F.2d 1266, 1274 (1983). The Chapter 7 trustee has exclusive standing to assert causes of action that belong to the estate. In re Educators Group Health Trust, 25 F.3d at 1284; In re E. F. Hutton Southwest Properties II, Ltd., 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989). However, a trustee does not have standing to pursue claims that belong solely to creditors of the bankruptcy estate. See Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 433-34 (1972). The distinction between estate claims and creditor claims is often ambiguous because the same underlying facts may support both an estate claim and a claim that belongs solely to a creditor. See, e.g., In re Seven Seas Petroleum, Inc., 522 F.3d 575, 585 (5th Cir. 2008) (observing that "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct."). Unfortunately, many of the cases that address this distinction fail to provide a useful framework for determining whether a claim belongs to the estate or

-5-

15-50743 - #121  File 04/11/17  Enter 04/12/17 07:44:10  Main Document  Pg 5 of 15

solely to a creditor of the estate.  Some courts ground their analysis on whether the claim at issue is a "personal" claim versus a claim that asserts a "generalized grievance" applicable to all of the estate's creditors.  See, e.g., Koch Refining v. Farmers Union Central Exchange, Inc., 831 F.2d 1339, 1342-43 (7th Cir. 1987); Lumpkin v. Envirodyne Industries, Inc., 933 F.2d 449, 463 (7th Cir. 1991).  As other courts have observed, this formula "is not an illuminating usage."  Steinberg v. Buczynski, 40 F.3d 890, 893 (7th Cir. 1994); see also Seven Seas, 522 F.3d at 588.  The flaw in this formula is that it may lead a court to conclude that a cause of action is property of the estate merely because it is based on conduct that affected more than one creditor as opposed to a single creditor.  Conduct that affects more than one creditor – such as fraudulent representations disseminated to multiple creditors – may give rise to non-estate claims that can be brought by those creditors. See Seven Seas,522 F.3d at 586.  Similarly, a claim may be property of the bankruptcy estate even if the estate only has a single creditor.  As the Fifth Circuit observed in Seven Seas, the terms  "personal claim" versus "general claim" is "best understood as descriptions to be applied after a claim has been analyzed to determine whether it is properly assertable by the debtor or creditor, and not as a substitute for the analysis itself."  522 F.3d at 588.

In Seven Seas, the Fifth Circuit eschewed the "personal" versus "general" approach taken by some courts in favor of an approach that focuses on whether the debtor could have raised a state law claim at the commencement of the bankruptcy case. Id. at 584. According to Seven Seas, a court must focus on "the nature of the injury for which relief is sought," as well as the "relationship between the debtor and the injury." Id. If the state law claim at issue is based on a direct injury to a creditor that is independent of any injury to the debtor, it is not a claim that the debtor could have asserted at the commencement of the case and, accordingly, is not property of the bankruptcy estate. Id. at 586. On the other hand, if a claim "alleges only indirect harm to a creditor" that derives from a "direct" injury to the debtor, the claim is an estate claim that can only be asserted by the Chapter 7 trustee. Id. at 584.

The Fifth Circuit's application of these principles to the facts of Seven Seas is useful. The plaintiffs in Seven Seas held unsecured notes issued by the debtor. Prior to the plaintiffs' investment, the debtor hired a consulting firm to prepare oil and gas reserve estimates that were incorporated into the debtor's SEC filings. These estimates proved to be inflated. The noteholders sued multiple defendants alleging negligent misrepresentation, aiding and abetting fraud, and violations of the Texas Securities

-7-

Act.  The noteholders alleged that they relied on the reserve estimates in deciding whether to invest in the unsecured notes, and that they were injured when these estimates proved to be misstated. The Fifth Circuit concluded that these claims "alleged more than an injury that is merely derivative of an injury to Seven Seas." Id. at 585.  Specifically, to the extent that the noteholders suffered direct injury by relying on false or misleading statements, there was a direct injury to the noteholders "that was independent of any injury to Seven Seas." Id. Conversely, claims based on allegations that a third party breached its fiduciary duties to the debtor, or otherwise engaged in conduct that harmed the debtor, are estate claims because the debtor could have asserted those claims at the commencement of the case. See, e.g., In re Educators Group Health Trust, 25 F.3d at 1285.  Any damage suffered by the debtor's creditors from that conduct would be merely derivative of the injury directly suffered by the debtor.  In Seven Seas, the court distinguished the noteholders' fraud claims from claims brought by the bankruptcy trustee against third parties alleging that they breached their duties to the debtor and interfered with management's fiduciary duties.  While this conduct may have affected the debtor's noteholders indirectly, that injury was merely derivative of a direct injury to the debtor. Id.; see also Mortgage America Corp., 714 F.2d at 1276-77 (concluding that

-8-

corporate denuding and corporate trust fund claims asserted by creditor were ultimately the debtor's claims and, hence, property of the bankruptcy estate even though the claims could have been asserted by a corporate creditor outside of bankruptcy under state law).

Here, Plaintiff's Amended Petition appears to assert two causes of action: breach of fiduciary duty and a violation of LUTPA. With respect to his fiduciary duty claim, Plaintiff alleges that Myers "purposely and intentionally reduced the assets and income of Acadian Elevator, Inc. and forced the company into bankruptcy, thereby making the minority interest of plaintiff completely worthless." Amended Petition at ¶ 4. Plaintiff further alleges that Myers formed a new company, ACE Elevator, LLC in 2013. He alleges that Myers transferred assets from Acadian Elevator to ACE and solicited the customers of Acadian Elevator on behalf of ACE. Id. at ¶¶ 7, 8. Plaintiff alleges that these actions diminished the value of his minority interest in the debtor. Id. Applying standards developed in Seven Seas and its progeny, these allegations squarely state an **estate** claim. The harm alleged was directly inflicted on Acadian Elevator. While Plaintiff alleges that he suffered damages as a result of this conduct, the harm that he suffered arose from the diminution of the value of his ownership interest in the debtor: Myers' actions "forced the company into

-9-

bankruptcy, *thereby making the minority interest of Plaintiff completely worthless*." Amended Petition at ¶4 (emphasis added). This allegation of indirect harm does not support an independent fiduciary duty claim on the part of Plaintiff.

The recent decision in Chiron Equities, 552 B.R. 674, illustrates the application of Fifth Circuit precedent in a similar context. In that case, the Chapter 7 trustee sold breach of fiduciary duty, breach of contract, and fraud claims to a third party in an auction approved by the court under 11 U.S.C. § 363. Id. at 680-81. As in the present case, the state court plaintiff asserted breach of fiduciary duty claims based on allegations that the defendant misused and embezzled the debtor company's cash and property. Id. at 688-90. The court held that the fiduciary duty claim was an estate claim because the claim was based on direct harm to the debtor, even though the plaintiff may have been harmed indirectly. Id. Accordingly, the court granted a section 105 injunction precluding the plaintiff from continuing a state court proceeding involving the same claims sold in the court-approved auction. Id. at 701.

Plaintiff contends that Chiron Equities is distinguishable because Louisiana law creates a separate and distinct cause of action for breach of the fiduciary duties owed to corporate

-10-

shareholders.  The court's analysis in Chiron Equities is based on Texas law.  The scope of the bankruptcy estate under section 541 and, therefore, whether a cause of action is an estate claim is ultimately a question of federal law.  See In re Segerstrom, 247 F.3d 218, 223 (5th Cir. 2001).  However, in applying the Seven Seas factors, courts look to state law in determining "the nature of the injury for which relief is sought" as well as the "relationship between the debtor and the injury."  Id.; Seven Seas, 522 F.3d at 588. Here, Plaintiff contends that applicable Louisiana law creates a fiduciary duty that runs to both the company and its shareholders.  Plaintiff's argument relies on the text of La. R.S. 12:91, which was in place when Plaintiff commenced his state court proceeding in 2012.[1] This provision states that officers and directors of a corporation "stand in a fiduciary relation to the corporation *and* to its shareholders." La. R.S. 12:91 (repealed) (emphasis added).  However, the cases and treatises that have construed this provision do not support Plaintiff's assertion of an independent cause of action for corporate shareholders. In Palowsky v. Premier Bank Corp., Inc., 597 So.2d 543 (La. App. 1st Cir. 1992), the court ruled that, regardless of the text of La. R.S. 12:91, a breach of fiduciary duty claim is a derivative claim, and a shareholder has no grounds to bring the claim in his or her

---

[1] This specific provision was repealed in 2014.

-11-

individual capacity. According to the court, "it is well-established that a shareholder of a corporation does not generally have a right to sue personally for alleged losses sustained by the corporation due to mismanagement and/or a breach of fiduciary duties." Id. at 544-45; see also Bordelon v. Cochrane, 533 So.2d 82, 85-86 (La. App. 3rd Cir. 1988). Similarly, the Louisiana Civil Law Treatise discussion of this provision explains that the statute does not eliminate the distinction between personal and derivative claims, and that suits "brought by shareholders to recover for damage or loss to corporation-owned property or interests-or to recover for losses caused to the corporation as a result of the self-dealing or negligence of a corporate officer or director are considered to be derivative in nature." 8 La. Civ. L. Treatise, Business Organizations § 34.03. Accordingly, Louisiana law is consistent with the law applied in Chiron Equities, and supports the court's conclusion that Plaintiff's fiduciary duty claim is an estate claim that was compromised and released by the Trustee.

Turning to Plaintiff's LUTPA claim, Plaintiff alleges that Myers created a competing company in 2013 and improperly moved assets and customers to that new company. This claim is grounded on conduct detrimental to Acadian Elevator and its ability to compete. Applying the Seven Seas standards, Plaintiff's LUPTA claim is an estate claim because it is based on an injury to

-12-

Acadian Elevator; any harm to Plaintiff was indirect. See In re Anderson, 539 B.R. 277, 289 (Bankr. W.D. La. 2015).

Finally, the Amended Petition appears to allege that certain conduct and transfers of the debtor's property occurred post-petition. To the extent that plaintiff is basing his claims, in part, on post-petition conduct, these allegations do not change the court's conclusion that these are estate claims. Both claims are soundly grounded in pre-petition conduct. To the extent that plaintiff is alleging transfers of the debtor's assets post-petition, only the trustee has standing to recover property of the bankruptcy estate that was transferred post-petition. See 11 U.S.C. §§ 549, 550. In sum, the Amended Complaint asserts estate claims that were compromised and released pursuant to the Trustee's Settlement Agreement.

**B. Availability of a Remedy.**

The hurdle for Myers is whether this court can grant him a remedy given that he is seeking relief merely by motion in the underlying bankruptcy case. Although Myers requests the court to interpret and enforce the Trustee's Settlement Agreement, the remedy he seeks is an injunction under 11 U.S.C. § 105 barring Plaintiff from proceeding to trial on May 15th. The problem with this remedy is that a request for injunctive relief under section 105 requires the commencement of an adversary proceeding. Rule 7001

-13-

of the Federal Rules of Bankruptcy Procedure provides that a "proceeding to obtain an injunction or other equitable relief, except when a Chapter 9, Chapter 11, Chapter 12, or Chapter 13 plan provides for the relief" is an adversary proceeding that is subject to the procedures set forth in the Federal Rules of Bankruptcy Procedure. These rules require the commencement of a separate adversary proceeding, service of process, and other safeguards applied to adversary proceedings. Here, Acadian Elevator commenced this case under Chapter 7, so there is no Chapter 11 plan to support the relief requested. Hence, injunctive relief in this case requires an adversary proceeding, not the motion practice initiated by Myers as a contested matter. See also 2 Collier on Bankruptcy ¶ 105.03[4][a] (2009) ("Courts have been near universal in reversing injunctions that have been issued without compliance with Rule 7001.") The court also notes that the injunctive relief granted in Chiron Equities was granted in an adversary proceeding. Accordingly, the court denies the request for injunctive relief without prejudice.

**C. Clarification of Stay Relief**.

Finally, Myers requests clarification of this court's order granting Plaintiff relief from the automatic stay. Plaintiff's motion for relief, filed May 10, 2016, requests relief from the stay to dismiss Acadian Elevator as a party in the state

-14-

court action.  By seeking to remove Acadian Elevator as a party, Plaintiff appears to acknowledge that he did not intend to assert estate claims.  The actual order submitted by plaintiff repeats the relief requested in the motion that plaintiff be allowed to proceed in state court after removing Acadian Elevator as a party.  By removing Acadian Elevator, plaintiff could only proceed on his individual claims as opposed to any derivative or other estate claims subject to the Trustee's Settlement Agreement.  Accordingly, any relief from the stay does not extend to estate claims.  The court acknowledges that the order granting relief is not clear on this point. Contemporaneously herewith, the court will enter an order clarifying that any relief from the stay does not extend to estate claims.

### CONCLUSION

For the reasons stated herein, the court DENIES Myers' request for injunctive relief under 11 U.S.C. § 105 without prejudice. The court GRANTS Myers' request for clarification of the order granting Plaintiff relief from the automatic stay.  An order reflecting the court's ruling will be entered contemporaneously herewith.

###

-15-